| | | | |
|---|---|---|---|
| **Fill in this information to identity the case:** | | | |
| Debtor 1 | Shyla Kesler | | |
| Debtor 2 | | | |
| United States Bankruptcy Court for the: | Eastern District of Michigan, Detroit Division | District of | MI (State) |
| Case Number | 1647019 | | |

Official Form 410S1

# Notice of Mortgage Payment Change

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of Creditor:**  
**MTGLQ Investors, L.P.**

**Court claim no (if known):** 5

**Date of payment change:** 12/01/2017  
Must be at least 21 days after date of this notice

**Last four digits** of any number you use to identify the debtor's account: **0550**

**New total payment:** $804.95  
Principal, interest, and escrow, if any

## Part 1: Escrow Account Payment Adjustment

**Will there be a change in the debtor's escrow account payment?**

☑ No

☐ Yes  Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

**Current escrow payment:**        **New escrow payment:**

## Part 2: Mortgage Payment Adjustment

**Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate note?**

☐ No

☑ Yes  Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

**Current interest rate:** 4.37500%    **New interest rate:** 4.62500%  
**Current principal and interest payment:** $582.44   **New principal and interest payment:** $593.38

## Part 3: Other Payment Adjustment

**Will there be a change in the debtor's mortgage payment for a reason not listed above?**

☑ No

☐ Yes  Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

Reason for change: _____

**Current mortgage payment:**        **New mortgage payment:**

| Debtor 1 | Shyla Kesler | Case Number (if known) | 1647019 |

## Part 4: Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

Check the appropriate box.

☐ I am the creditor

☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)

**I declare under penalty of perjury that the information provided in this Notice is true and correct to the best of my knowledge, information, and reasonable belief.**

/s/ Lois Gober                                           Date    11/06/2017

Signature

| **Print** | Lois Gober | Title | BK Case Manager |
| Company | Shellpoint Mortgage Servicing | | |
| Address | PO BOX 10826 | | |
| | Greenville | SC | 29603-0826 |
| Contact phone | (800) 365-7107 | Email | mtgbk@shellpointmtg.com |

# ADJUSTABLE RATE NOTE
(LIBOR One-Year Index (As Published In The Wall Street Journal)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| OCTOBER 7, 2004 | Waterford, | MICHIGAN |
|---|---|---|
| [Date] | [City] | [State] |

6207 Delhi St, Clarkston, MI 48348
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $117,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **ADVANTAGE MORTGAGE COMPANY OF MICHIGAN, A MICHIGAN CORPORATION**.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.375%**. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the **1ST** day of each month beginning on **DECEMBER 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **NOVEMBER 1, 2034,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
**2960 W WALTON BLVD
101
WATERFORD, MI 48329**
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. **$586.66.** This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the **1ST** day of **NOVEMBER, 2007** and on that day every **12TH** month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in **The Wall Street Journal**. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND SEVEN-EIGHTHS** percentage point(s) ( **2.875%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **6.375%** or less than **2.875%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000%** ) from the rate of interest I have been paying for the preceding **12** month(s). My interest rate will never be greater than **10.375%**.

Initials: _____

MULTISTATE ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - **Fannie Mae** UNIFORM INSTRUMENT Form 3526 6/01
© 2001-2003 Online Documents, Inc. Page 1 of 3 F3526NOT 0307

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Initials: _____

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
SHYLA M. KESLER

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

ADVANTAGE MORTGAGE COMPANY OF
MICHIGAN
BY: _____
PRINTED NAME: Joseph A. Hoover
ITS: President

[Sign Original Only]

MULTISTATE ADJUSTABLE RATE NOTE - WSJ One-Year LIBOR - Single Family - Fannie Mae UNIFORM INSTRUMENT    Form 3526 6/01
© 2001-2003 Online Documents, Inc.          Page 3 of 3                                                  F3526NOT  0307

ADVANTAGE MORTGAGE COMPANY OF MICHIGAN

## FIRST LIEN LETTER

RE: Title Commitment Number:
     Borrower(s): **SHYLA M. KESLER**

     **6207 Delhi St**
     **Clarkston, MI 48348**
     Date: **OCTOBER 7, 2004.**

ATTN:

We have closed and completely disbursed the proceeds of the mortgage contemplated by the above mentioned commitment in the amount of **117,500.00.**

The said mortgage is a valid first lien on the property described in said commitment, subject only to the exceptions shown therein, and there are no outstanding or unpaid taxes or special assessments on said premises as to the date thereof.

An Alta Mortgagee's Title Policy, dated as of the date of recording of the mortgage and subject only to those exceptions referred to above, will be issued in due course.

This letter is an endorsement to the captioned commitment, and is subject to the schedules, conditions and stipulations of the Alta Loan Policy Form.

_[signature]_
SETTLEMENT/CLOSING AGENT

BY: _____

# UNITED STATES BANKRUPTCY COURT

## Eastern District of Michigan Detroit

In Re: Shyla Kesler

Case No: 16-47019
Chapter: 13

## PROOF OF SERVICE

I certify that a copy of the foregoing documents were served upon the following persons electronically or by mail via the U.S. Postal Service, postage prepaid or by personal delivery, at their scheduled addresses on this day, __11-6-2017__.

**COURT:**

Eastern District of Michigan (Detroit)

**TRUSTEE:**

David Wm Ruskin
26555 Evergreen Rd Ste 1100
Southfield, MI 48076-4251
248-352-7755

**DEBTORS COUNSEL:**

Douglas P. Chimenti
15400 Nineteen Mile Road
Suite 115
Clinton Township, MI 48038-6311
586-228-3636

**DEBTORS:**

Shyla Marie Kesler
6207 Delhi
Clarkston, MI 48348

/s/ Lois Gober

Shellpoint Mortgage Servicing
PO Box 10826
Greenville, SC 29603-0826
(800) 365-7107
mtgbk@shellpointmtg.com